1  THE GRAVES FIRM
2  ALLEN GRAVES (SB# 204580)
   E-mail: allen@gravesfirm.com
3  ELIZABETH SULLIVAN (SB# 212482)
   E-mail: liz@gravesfirm.com
4  790 E. Colorado Blvd., 9th Floor
5  Pasadena, CA 91101
   Telephone: (626) 240-0575
6  Facsimile: (626) 737-7013

7
   Attorney for Plaintiff
8  Jim Swain

9

10                 UNITED STATES DISTRICT COURT

                 NORTHERN DISTRICT OF CALIFORNIA
11

12

13  Jim Swain,                          CASE NO. 3:10-cv-04192-CRB

14           Plaintiff,                 **NOTICE OF MOTION AND
                                        MEMORANDUM OF POINTS AND
15       v.                             AUTHORITIES IN SUPPORT OF
                                        MOTION FOR AN ORDER:**
16
   Ryder Integrated Logistics, Inc. and **(1) PRELIMINARILY APPROVING
17  DOES 1 through 10, inclusive,        CLASS ACTION SETTLEMENT;**
18           Defendants.                **(2) DIRECTING DISTRIBUTION OF
                                        NOTICE OF SETTLEMENT AND
19                                       CLAIM FORM; AND**
20                                      **(3) SETTING A HEARING FOR FINAL
                                        APPROVAL OF THE SETTLEMENT**
21

22

23                                      Hearing Date:   June 29, 2012
                                        Time:           10:00 a.m.
24                                      Courtroom:      6
                                        Judge:          Hon. Charles R. Breyer
25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................1

II.  PROCEDURAL HISTORY ..........................................................................................2

III.  THE CLASS .................................................................................................................3

IV.  VALUE OF THE CLAIMS .........................................................................................3

    A. Quantifying Break Violations..................................................................4

    B. Calculating Unpaid Wages .....................................................................4

    C. Analyzing Penalties ................................................................................4

        1. Labor Code §210 ...........................................................................4

        2. Labor Code §558 ...........................................................................5

        3. Labor Code §203 ...........................................................................5

    D. Interest.....................................................................................................6

    E. Litigation Risks ......................................................................................6

V.  THE SETTLEMENT......................................................................................................9

    A. The Common Fund..................................................................................9

    B. Payments to the Class Members ...........................................................10

    C. Future Payments to the Class Members.................................................11

    D. Release of Claims by the Class..............................................................11

VI.  NOTICE AND CLAIM PROCEDURES....................................................................11

VII.  TELEPHONE AND WEB SUPPORT FOR CLASS MEMBERS ...........................12

VIII.  CONFIRMATION, PAYMENT, AND DISMISSAL ............................................13

IX.  PRELIMINARY APPROVAL IS APPROPRIATE...................................................13

    A. The Preliminary Approval Process .......................................................13

    B. The Settlement Is Fair and Reasonable.................................................14

X.  CONCLUSION.............................................................................................................15

NOTICE OF MOTION AND MPA IN SUPPORT OF PRELIMINARY APPROVAL

1

## <u>TABLE OF AUTHORITIES</u>

2

## <u>CASES</u>

3
*Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.*,

4
    152 Cal. App. 4th 1522, 1539, 62 Cal. Rptr. 3d 396 (2007)..........................................13

5
*Brinker Restaurant Corp. v. Superior Ct.*,

6
    165 Cal. App. 4th 25 (2008) .......................................................................................8

7
*Brown v. Fed. Express Corp.*,
    2008 U.S. Dist. LEXIS 17125, 16-17 (C.D. Cal. Feb. 26, 2008) ...................................8

8

9
*Cicairos v. Summit Logistics, Inc.*,
    133 Cal. App. 4th 949, 962, 35 Cal. Rptr. 3d 243 (2005)................................................7

10

11
*Dilts v. Penske Logistics LLC*,
    2011 U.S. Dist. LEXIS 122421 (S.D. Cal.) ....................................................................9

12

13
*Harris v. Pacific Anchor Transport*, *Inc.*,
    195 Cal. App. 4th 765 (2d Dist. 2011)............................................................................9

14

15
*Lopez v. Wendy's Int'l, Inc.*,
    2011 U.S. Dist. LEXIS 151513 (C.D. Cal. Sept. 19, 2011) ...........................................8

16

17
*Perez v. Safety-Kleen*,
    2007 U.S. Dist. LEXIS 48308 (N.D. Cal. June 27, 2007) .............................................7

18

19
*Pineda v. Bank of America, N.A.*,
    50 Cal. 4th 1389, 1393 (2010). ....................................................................................5

20

21
*Speed Shore Corp. v. Denda*,
    605 F.2d 469, 473 (9th Cir. 1979) ...............................................................................13

22
*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080, 1088-1089 (N.D. Cal. 2007)......................................................8

23

24
*Williams v. First National Bank*,
    216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910).....................................................13

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## STATUTES

California Business and Professions Code §§17200 *et seq*...................................................6

California Code of Civil Procedure §338............................................................5

California Code of Civil Procedure §340........................................................4, 5

California Labor Code §218.6............................................................6

California Labor Code §226.7........................................................3, 4

California Labor Code §512............................................................3

California Labor Code §2699(i)............................................................5


## TREATISES

DLSE Enforcement Manual 45.2.1 ............................................................7

HERBERT B. NEWBERG & ALBA CONTE,
    NEWBERG ON CLASS ACTIONS §§11.26, 11.47 (3d ed. 1992) ....................................14

MANUAL FOR COMPLEX LITIGATION,
    FOURTH §13.14 (Stanley Marcus, ed. 2004)................................................14


## REGULATIONS

49 U.S.C. §1501(c)(1) ............................................................8

8 C.C.R. §13520 ............................................................6

NOTICE OF MOTION AND MPA IN SUPPORT OF PRELIMINARY APPROVAL

**NOTICE IS HEREBY GIVEN** that on June 29, 2012 at 10:00 a.m., or as soon as the matter may be heard, in Department 6 of this Court, located at 450 Golden Gate Ave., San Francisco, CA  94102, Class Representative Jim Swain will and hereby does move this Court for an order: 1) Preliminarily approving the Joint Stipulation of Class Action Settlement and Release filed concurrently herewith; 2) Preliminarily certifying a class for the purposes of settlement;  3) Directing distribution to the Class of the Notice of Settlement and Claim Form; 4) Appointing Allen Graves as Class Counsel; 5) Appointing Jim Swain as Class Representative;  6) Appointing Kurtzman Carson Consulting as Settlement Administrator; and 7) Setting a hearing for final approval of the settlement.

## I.  INTRODUCTION

In this action, Class Representative Jim Swain seeks to recover unpaid wages and penalties that he argues are due to him and his fellow employees.  The Defendant is Ryder Integrated Logistics, Inc. ("Ryder"), a company that provides logistics support in the form of trucking and warehouse services to businesses in California.  The claims in this case turn on an alleged failure by Ryder to provide all of the meal and rest breaks that are required by the California Labor Code, and failure to pay wages and provide accurate paystubs related to the alleged meal and rest break violations.  The parties have reached a settlement in this matter and now seek preliminary approval of that settlement.

After a year and a half of litigation, Swain has obtained an excellent result for the Class that he represents.  Under the settlement, a Class of approximately 1,437 employees will share a payment of $1,200,000.  All of the money will be paid out.  There will be no reversion of funds to Defendant.

Once this Court grants approval, a third-party Settlement Administrator will mail a written Notice of Settlement and Claim Form to each Class Member.  Each Class Member will then have an opportunity to claim his or her share of the settlement, opt-out of participation or object to the settlement.  Finally, the parties will return to this Court, report on the Class Member responses and seek final approval of the settlement.

## II. PROCEDURAL HISTORY

Plaintiff filed his suit against Ryder on August 13, 2010.  Two weeks later, Plaintiff promulgated an extensive set of discovery including both Special Interrogatories and Document Requests.  The discovery sought extensive records including policy documents relating to meal breaks, rest breaks, and payment of wages; information regarding systems used by Ryder for tracking work hours and meal breaks; and communications breaks and the payment of wages for missed breaks.  Graves Decl. ¶9.

Plaintiff got what he wanted.  Ryder produced both paper time records and On-Board Computer ("OBC") data recorded by computers installed in Ryder trucks.  Graves Decl. ¶11.  By the date of mediation, Plaintiff had analyzed 13,685 records covering the period from August 14, 2006 to March 24, 2011.  Borhani Decl. ¶9.

To better understand the available data, Class Counsel retained the services of ERS Group, a nationally-known team of economists and statisticians who specialize in data analysis for employment litigation.  Borhani Decl. ¶¶1-5.  With the help of ERS Group, Class Counsel reviewed and analyzed every single record produced by Defendant.  Graves Decl. ¶18.  For time periods or locations where data was not available, Class Counsel and his expert developed a model that extrapolated violation rates based on the available data.  Graves Decl. ¶19; Borhani Decl. ¶11.

The analysis was guided by a detailed data analysis plan in which Class Counsel specified eight different rubrics that the ERS Group statisticians would use to assess the available data.  Borhani Decl. ¶13.  The analysis included multiple calculations of potential violations and the recovery to the Class under different legal theories and possible rulings.  Graves Decl. ¶20.  Class Counsel also developed dynamic calculation tools that allowed him to project the potential recovery available to the Class on the basis of different positions that Defendant might take at trial.  *Id.* at ¶21.  In addition to quantitative analysis, Class Counsel, working with the experts at ERS Group, also performed stochastic analyses designed to identify patterns in the data that could provide support for class certification and develop insight into the operating practices that lay at

-2-

the heart of this case. *Id.* at ¶22. Class Counsel also worked with ERS Group to perform comparative analyses of the available data sets across timeframes to ensure that the data produced by Defendant was accurate. *Id.* at ¶23.

Once he had obtained all of the data and documents necessary to fairly value the instant case, Plaintiff agreed to mediation before well-known mediator Joel Grossman of JAMS. Prior to mediation, Class Counsel provided Grossman with 51 pages of single-spaced mediation briefing and hundreds of pages of supporting materials. *Id.* at ¶27.

One mediation was not enough. After a full day of mediation on September 7, 2011 the parties were at an impasse. A second full day of mediation on November 11, 2011 resolved the matter only after Grossman made a mediator's proposal based on his own valuation of the case, and the parties accepted that proposal. *Id.* at ¶30.

### III.  THE CLASS

The Settlement Class is comprised of all hourly-paid employees at any Ryder warehouse or driver location in California who were employed by Ryder from August 13, 2006 through the date of preliminary approval. Joint Stipulation of Settlement ¶5. As stated in the February 17, 2012 order of this Court, the Class does not include drivers who became employed by Ryder as a result of the acquisition of Scully Distribution Services, Inc. *Id.* at ¶11. Based on the foregoing, and accounting for individuals who have come to work for Ryder since the mediation, the total Class size will be approximately 1,437. Joint Stipulation of Settlement ¶11.

### IV.  VALUE OF THE CLAIMS

In a meal break case, the value of an individual's wage claim is a function of the number of times that he or she has experienced a meal break violation. Each hourly employee is entitled to a thirty-minute meal break after working five hours and a second thirty-minute meal break after working ten hours. California Labor Code §512. When an employee does not receive a required meal break, he or she is entitled to a payment of one

additional hour of wages at his or her normal rate of pay.  California Labor Code §226.7.
In order to determine the value of the claims in this case, Class Counsel applied a detailed
multi-step analysis:

**A.  Quantifying Break Violations**

Class Counsel used Defendant's time and meal break records to quantify the
number of meal and rest break violations to which each Class Member was subject during
the liability period.  Graves Decl. ¶¶18-23.  Class Counsel designed eight different
analysis rubrics to ensure that he completely understood the available data.  Borhani
Decl. ¶13.  After an extensive analysis, statistician Hossein Borhani of ERS Group
identified 371,507 shifts that contained a meal break violation.  *Id.* at ¶15.

**B.  Calculating Unpaid Wages**

Each time that an employee experiences a violation, he or she is entitled to one
additional hour of pay at his or her regular rate of pay.  California Labor Code §226.7.
Relying on wage rate data provided by Defendant for each of its California locations, the
meal break violations identified in the electronic data, when combined with the violations
estimated for periods and locations for which data was not available, yield a total wage
liability of $6,551,708.  *Id.* at ¶16.

**C.  Analyzing Penalties**

Prior to mediation, Class Counsel conducted a detailed analysis of the potential
penalty recovery.  As described more fully below, each penalty presents unique legal
issues and potential defenses.  Also, many penalties are paid in large part or even entirely
to the State of California and it is necessary to distinguish these payments from money
that will actually be paid to the Class Members:

**1.  Labor Code §210**

**Penalty.**  This section provides two different penalties when an employer fails to
pay wages when they are earned.  First, Section 210 provides a penalty of $100 for the
first pay period in which an employer fails to pay earned wages and $200 for every
subsequent pay period.  In addition to the recurring penalties each pay period, Section 210

also provides for a penalty equal to 25% of all unpaid wages.  The statute of limitations for Section 210 penalties is one year.  California Code of Civil Procedure §340.

**Distribution.**  Section 210 requires that 12.5% of all penalties be paid to the LWDA and "the remainder shall be paid into the State Treasury . . ."

**Defenses.**  Defendants generally dispute this penalty by pointing to the fact that it is not mandatory, but instead assessed at the discretion of the trial court pursuant to Labor Code §2699(e)(1).

### 2.  Labor Code §558

**Penalty.**  Section 558 provides for a penalty against any employer who violates any section of Part Two, Chapter One or "any provision regulating hours and days of work in any order of the Industrial Welfare Commission."  The penalty is $50 for the first pay period in which an employee is subject to a violation and $100 for every pay period thereafter.  The statute of limitations for Section 558 penalties is one year.  California Code of Civil Procedure §340.

**Distribution.**  Seventy-five percent of all penalties recovered must be paid to the State of California.  Labor Code §2699(i).

**Defenses.**  Because Labor Code §512 requires meal breaks, and that section is located in Part Two, Section One of the Labor Code, Plaintiff argues that Section 558 penalties are applicable to each pay period in which a Class Member worked more than five hours without a meal break.  Defendant contends that the penalty is inapplicable because Section 512 is not a "provision regulating hours and days of work."

### 3.  Labor Code §203

**Penalty.**  This section applies to an employee who was entitled to unpaid wages at the time that his or her employment terminated.  If an employee can demonstrate that the employer's failure to pay was "willful," he or she may collect up to thirty days of pay at his or her regular rate as a penalty.  The statute of limitations for penalty claims under Section 203 is the same as the statute of limitations for a wage claim:  three years.  California Code of Civil Procedure §338.  California Business and Professions

-5-

1  Code §§17200 *et seq.* do not extend the statue of limitation for this penalty.  *Pineda v.*

2  *Bank of America, N.A.*, 50 Cal. 4th 1389, 1393 (2010).

3      **Distribution.**  The distribution of Section 203 penalties is an open question.  Prior

4  to the promulgation of Labor Code §2699, defendants routinely argued that individual

5  employees lacked standing to collect Section 203 penalties.  Plaintiffs argued that

6  individual employees had standing to collect penalties pursuant to Labor Code §218, but a

7  dearth of appellate authority led to inconsistent results at the trial court level.  Labor

8  Code §2699 mooted this debate by authorizing an individual employee to stand in the

9  place of the LWDA and collect penalties, as a Private Attorney General.  Although

10  Section 2699 resolved the standing issue, it complicated the distribution question.  If

11  employees can collect Section 203 penalties without resorting to Section 2699, it seems

12  likely that they are entitled to receive the entirety of any penalty.  If, however, the

13  employee must rely on Section 2699 to collect the Section 203 penalty, 75% of any

14  payment would go to the State pursuant to Section 2699(i).

15      **Defenses.**  Defendant disputed the applicability of Section 203 penalties by arguing

16  that the company's failure to pay could not be classified as "willful."  In California, a

17  failure to pay wages is not willful if the employer has a good faith dispute regarding the

18  payment:  "A good faith dispute that any wages are due will preclude imposition of

19  waiting time penalties under Section 203."  8 C.C.R. §13520.

20  **D.  Interest**

21      Plaintiffs can recover pre-judgment interest on unpaid wages.  Labor Code §218.6.

22  Assuming a 10% annual rate of interest and a consistent rate of accrual for unpaid wages

23  since August 13, 2006, the interest due on unpaid wages as of the first mediation on

24  September 7, 2011 would total approximately $1,637,927.  Graves Decl. ¶36.

25  **E.  Litigation Risks**

26      Wages, penalties and interest can be recovered only if the Class prevails at trial.  In

27  this case, there were several risks that Class Counsel was required to consider in

28  determining the value of the class claims:

NOTICE OF MOTION AND MPA IN SUPPORT OF PRELIMINARY APPROVAL

**Reduction of Penalties.**  There was a risk that this Court would rule the aggregate penalties in this matter are confiscatory or otherwise inappropriate in light of the damages suffered by each individual Class Member.  For example, an average employee who missed just one meal break in a pay period might be entitled to less than $20 in unpaid wages, but the employer could be liable for more than $300 in penalties for the same violation.  Even if this Court imposed such penalties, Defendant argued that an award of penalties that were more than ten times the actual unpaid wages in a pay period would be unlikely to survive on appeal.

**Class Certification.**  Because all of the Class Members have been subject to the same policy of refusing to pay Section 226.7 wages, Plaintiff maintains that commonality and typicality would be easily established.  For its part, Defendant maintained that variations in the type of work performed by the different members of the Class would weigh against class certification.  Rulings on class certification are within the discretion of the trial court, and the district courts have upheld both certification and denial of certification in meal break and overtime cases.  Because a denial of certification could eliminate any recovery for the Class, and because reversal of a class certification ruling is difficult to obtain on appeal, the risk associated with class certification necessarily reduced the value of the class claims.

**Changing Legal Standards.**  When the instant case settled, the issue that most divided the parties was the employer's duty to ensure that employees actually take meal breaks.  Historically, California courts and administrative agencies have held that an employer is required to ensure that employees actually take the legally mandated meal breaks.  "[T]he burden of insuring that employees take a meal period within the specified time is on the employer; it is the employer's duty not to 'employ any person for a work period of more than. . .'"  DLSE Enforcement Manual 45.2.1.  The DLSE interpretation has been implemented by both the Northern District and state courts.  *See, e.g., Perez v. Safety-Kleen*, 2007 U.S. Dist. LEXIS 48308 (N.D. Cal. June 27, 2007); *Cicairos v. Summit Logistics, Inc.*, 133 Cal. App. 4th 949, 962, 35 Cal. Rptr. 3d 243 (2005).

Recently, some federal and state courts have diverged from the traditional rule and proposed a new reading of the Wage Order under which employers need only offer a meal break to employees. *See, e.g., Lopez v. Wendy's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 151513 (C.D. Cal. Sept. 19, 2011); *Brown v. Fed. Express Corp.*, 2008 U.S. Dist. LEXIS 17125, 16-17 (C.D. Cal. Feb. 26, 2008); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1088-1089 (N.D. Cal. 2007); *Brinker Restaurant Corp. v. Superior Ct.*, 165 Cal. App. 4th 25 (2008), *pet. for review granted*, *ordered depublished*, 85 Cal. Rptr. 3d 688 (2008). The rule proposed by cases like *Lopez* and *Brinker* represents a real threat to the meal break claims in this case. If Defendant could avoid liability simply by showing that it "offered" a break, Plaintiff's ability to enforce the Labor Code would be seriously compromised. The second session of mediation occurred just three days after the oral argument in *Brinker*. The Supreme Court has not yet issued its opinion in *Brinker*.

In the absence of a controlling rule from the California Supreme Court, Class Counsel researched this issue extensively, including a comprehensive review of every published authority on the subject and more than 10,000 pages of legislative and administrative history. Graves Decl. ¶26. The risk of an adverse ruling in *Brinker* necessarily impacted the value of the meal break claim.

**Federal Preemption.** The instant case presented a risk that is unique to plaintiffs litigating against the transportation industry. That risk is a product of the Federal Aviation Administration Authorization Act of 1994 ("FAAA Act"). The FAAA Act preempts state and local regulation of motor carriers' interstate or intrastate transportation of property when that regulation affects the carriers' prices, routes, or services. Specifically, 49 U.S.C. §14501(c) provides in pertinent part: "Except as provided in paragraphs (2) and (3), a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. §1501(c)(1).

On October 19, 2011, Judge Janis L. Sammartino of the Southern District held that the FAAA Act preempted California's employment laws. *Dilts v. Penske Logistics LLC*, 2011 U.S. Dist. LEXIS 122421 (S.D. Cal.). The *Dilts* court, found that the meal break requirement of Labor Code §512 was an economic regulation that was "significantly impacting the routes or services of the carrier's transportation" and thus "preempted by the FAAA Act." *Id.* at 35.

Although *Dilts* is not controlling law, and at least one conflicting state court case does exist,[1] there was a very real risk that this Court would adopt the *Dilts* rule. The adverse effect that such a ruling would have on the value of the instant case to the Class Members cannot be overstated.

## V.  THE SETTLEMENT

In light of the risks in this case, the value of the settlement compares favorably with the value of the claims. The basic terms of the agreement are as follows:

**A. The Common Fund**

The proposed settlement will be a common fund with no reversion to Defendant. Joint Stipulation of Settlement ¶19(a). The parties refer to the amount that Defendant will pay to create the common fund as the "Total Settlement Amount." The Total Settlement Amount of $1.2 million will be used to pay:  (1) all wages, penalties, interest, payroll taxes and/or other amounts to be paid to Settlement Class Members; (2) the payment to the Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code §2699 *et seq.*; (3) attorney fees and costs of Class Counsel; (4) the service payment to the Class Representative; and (5) all costs of administration. *Id.* All payments from the fund will be subject to final approval by this Court. The parties currently expect to seek final approval for the following expenses:

---

[1] *Harris v. Pacific Anchor Transport, Inc.*, 195 Cal. App. 4th 765 (2d Dist. 2011).

| Total Settlement Amount | $1,200,000 |
| LWDA Payment | ($5,000) |
| Maximum Requested Service Payment | ($20,000) |
| Maximum Requested Attorney Fees | ($400,000) |
| Estimated Attorney Costs | ($70,000) |
| Estimated Administration Costs | ($31,200) |
| **Net Distribution Amount** | **$673,800** |

**B. Payments to the Class Members**

The parties refer to the portion of the Total Settlement Amount that will be paid directly to the Settlement Class Members as the "Net Distribution Amount." Joint Stipulation of Settlement ¶19(b). The Net Distribution Amount is equal to the Total Settlement Amount less the expenses that are to be paid from the fund. *Id.* The entire Net Distribution Amount will be distributed among the Settlement Class Members who file Claim Forms. *Id.* Thus, if less than 100% of the Settlement Class Members file Claim Forms, the amount paid to each Class Member who does file a Claim Form will increase.

Each Class Member's Individual Settlement Amount will be based on the number of pay periods that the Class Member worked as an hourly employee for Ryder during the period covered by the settlement. Each Class Member will receive two credits per pay period or major fraction of a pay period that he or she worked for Ryder in California as a driver from August 3, 2010 through the date of preliminary approval. *Id.* at ¶19(c). Each pay period worked in a non-driver position will be worth one credit. *Id.* The value of a credit will equal the Net Distribution Amount divided by the number of credits. *Id.*

For example, if the Net Distribution Amount is $673,000 and the total number of credits awarded is 100,000, the value of a credit would be $6.73 ($673,000/100,000). A non-driver Class Member who worked four years or 200 pay periods would receive 200 credits for a total award of $1,346 (200 x $6.73). A driver Class Member with the same number of pay periods would receive $2,692.

With regard to tax treatment, 50% of each Class Member's payment will be treated as back wages subject to normal tax withholding and will be reported to the taxing authorities on an IRS Form W-2. *Id.* at ¶19(d). The other 50% will be treated as prejudgment interest and statutory non-wage payments. *Id.* There will be no tax withholding on this portion of the payment and the Settlement Administrator will issue an IRS Form 1099 where required. *Id.*

**C. Future Payments to Class Members**

In addition to the immediate payments, the settlement provides future payments to both Class Members and future employees. Specifically, pursuant to Paragraph 19(F) of the Joint Stipulation of Settlement, "Defendant agrees that it shall, within 30 days after the Final Approval Date, implement and maintain an internal standard operating procedure that provides for payment of Labor Code Section 226.7 wages to its hourly employees in California when Defendant prevents an employee from receiving a meal period that must be provided under applicable law."

**D. Release of Claims by the Class**

In exchange for the payments required by the settlement, each Settlement Class Member who does not request exclusion from the settlement will release the claims at issue in this lawsuit. The claims released by the Class correspond exactly to the claims in this case. *Id.* at ¶ 21. Other than the need to file a Claim Form, the release is the only requirement that the settlement places on Settlement Class Members.

## VI.  NOTICE AND CLAIM PROCEDURES

The parties have selected Kurtzman Carson Consulting as the Settlement Administrator. Before selecting Kurtzman, the parties reviewed bids from multiple settlement administration firms. Graves Decl. ¶37, Exh. B. The Kurtzman bid was the lowest, and the parties agree that Kurtzman is the best qualified to provide services in this case. *Id.* at ¶38. Under the terms of the Joint Stipulation of Settlement, Kurtzman will implement a five-step notice and claim procedure:

1      **First,** within fourteen (14) days after preliminary approval, Defendant will provide

2  the Settlement Administrator with a list of all Settlement Class Members, including their

3  last known address, telephone number, and Social Security number.  Joint Stipulation of

4  Settlement ¶26.

5      **Second,** the Settlement Administrator will search a National Change of Address

6  Database to confirm the current address for each Settlement Class Member prior to

7  mailing the notice.  *Id.* at ¶ 28.

8      **Third,** within twenty-one (21) days after preliminary approval, the Settlement

9  Administrator will send each Settlement Class Member a Notice of Pendency of Class

10  Action, Proposed Settlement, and Hearing Date for Court Approval ("Notice") and a

11  Claim Form printed on a postage-paid postcard.  *Id.* at ¶27.  A copy of the proposed

12  Notice is attached as Exhibit 2 to the Joint Stipulation of Settlement and a copy of the

13  Claim Form is attached as Exhibit 3.

14      **Fourth,** within twenty-four (24) days after mailing the Notice, the Settlement

15  Administrator will send a Reminder Notice to each Class Member who has not returned a

16  Claim Form.  Joint Stipulation of Settlement ¶33.

17      **Fifth,** Settlement Class Members will have sixty (60) days from the initial mailing

18  in which to file a Claim Form, object, or request exclusion from the Class.  *Id.* at ¶34-35.

19

20          **VII.  TELEPHONE AND WEB SUPPORT FOR CLASS MEMBERS**

21      The Settlement Administrator will maintain toll-free telephone support and a

22  website that Class Members can use to contact the Settlement Administrator if they have

23  questions.  Joint Stipulation of Settlement ¶¶29-30.  The website will also allow Class

24  Members to file Claim Forms online and check the status of pending Claim Forms.  *Id.*  In

25  addition, Class Counsel has confirmed that Kurtzman has the ability to offer multilingual

26  support to any Settlement Class Member who prefers to communicate in a language other

27  than English.  Graves Decl. ¶39.

28

## VIII.  CONFIRMATION, PAYMENT, AND DISMISSAL

The parties will follow a three-step procedure for final disposition of the case. **First,** within ten (10) days after Final Approval, Ryder will deliver to the Settlement Administrator the Total Settlement Amount.  Joint Stipulation of Settlement ¶39.  **Second,** after the receipt of the funds from Ryder, the Settlement Administrator will mail payments to the Settlement Class Members who filed Claim Forms.  *Id.* at ¶40.  **Third,** once Defendant discharges all of its obligations under the settlement, the parties will move for an order dismissing the instant case.  *Id.* at ¶47.

After mailing payments, the Settlement Administrator will continue to monitor returned mail and research the correct address for any payment that is returned by the post office.  Returned payments will be re-mailed to the updated address within five (5) days. *Id.* at 28.  If a payment is returned a second time, or if a payment check goes un-cashed for more than 180 days, the Settlement Administrator will donate the funds to a charity mutually selected by the parties.  *Id.* at ¶42.

## IX.  PRELIMINARY APPROVAL IS APPROPRIATE

### A. The Preliminary Approval Process

In both federal and California courts, "[i]t is well recognized that settlement agreements are judicially favored as a matter of sound public policy."  *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979); *Aviation Data, Inc. v. American Express Travel Related Services Co., Inc.*, 152 Cal. App. 4th 1522, 1539, 62 Cal. Rptr. 3d 396 (2007).  The reason for the policy is simple:  "Settlement agreements conserve judicial time and limit expensive litigation."  *Speed Shore Corp.*, *supra*, 605 F.2d 469, 476 (citing *Williams v. First National Bank*, 216 U.S. 582, 30 S. Ct. 441, 54 L. Ed. 625 (1910)).

Mindful of the general preference for negotiated settlements of class actions, federal courts follow a two-step process:  **1)** An early (preliminary) review by the trial court, and **2)** A final review after notice has been distributed to the Class Members for their comment or objections.  The Manual for Complex Litigation explains it like this:

-13-

> This usually involves a two-stage procedure.  First, the judge reviews
> the proposal preliminarily to determine whether it is sufficient to
> warrant public notice and a hearing.  If so, the final decision on approval
> is made after the hearing.  MANUAL FOR COMPLEX LITIGATION,
> FOURTH §13.14 (Stanley Marcus, ed. 2004).

Thus, preliminary approval is simply a conditional finding that the settlement appears to be within the range of acceptable settlements.  Consistent with the general policy favoring negotiated resolution, a settlement "within the range of reasonableness required for a settlement offer, is presumptively valid subject only to any objections that may be raised at a final hearing."  HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §11.26 (3d ed. 1992).

While the recommendations of counsel proposing the settlement is not conclusive, the Court can properly take such recommendations into account, particularly where, as here, counsel has been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and have obtained substantial data from the opposing party.  *See* NEWBERG §11.47.  In this case, Class Counsel has substantial experience with meal and rest break cases like the one at issue here.  Graves Decl. ¶32.  After considering all of the risks and benefits of litigation, Class Counsel believes that this settlement is in the best interests of the Class.  *Id.* ¶33.

**B.  The Settlement Is Fair and Reasonable**

This is an excellent settlement.  The value of the settlement is $1,200,000.  Assuming a class size of 1,437, the settlement recovers $835 per Class Member before fees and expenses.  Assuming a Net Distribution of $673,800, the gross payment per Class Member after fees and expenses will be more than $468.

In light of the risks imposed by the pending *Brinker* case, the *Dilts* case and the other risks described in Section IV(E) *supra*, a settlement that recovers such substantial payments is substantively fair and reasonable.  The settlement represent an excellent outcome because of two factors:

-14-

1    **First**, the instant settlement provides no reversion to Defendant.  That means that

2    the average payment to a Class Member who files a Claim Form will actually be higher

3    than the average payment values listed above because the entire Net Settlement Amount is

4    shared by the Class Members who file Claim Forms.  **Second**, Defendant's commitment

5    to implement systematic payment of Section 226.7 payments in the future as described in

6    Section V(C) provides a real monetary benefit to both Class Members and future

7    employees that goes beyond the immediate payments associated with the settlement.

8

9                                    **X.  CONCLUSION**

10            Working with some of the best experts in the country, Class Counsel has conducted

11   a painstaking review of the records in this case.  After carefully parsing that data and

12   exhaustively researching the current state of the law, Class Counsel and Plaintiff are both

13   certain that accepting the mediator's proposal was best for the Class.  Graves Decl. ¶30;

14   Swain Decl. ¶6.  In light of the strong policy favoring settlement, the extensive discovery

15   and analysis that supported the instant settlement and the excellent value that the instant

16   settlement offers to the Class, this Court should grant preliminary approval.

17

18

19   DATED:  April 6, 2012              THE GRAVES FIRM
                                        ALLEN GRAVES
20

21                                      By: _____

22                                              ALLEN GRAVES
                                        Attorney for Plaintiff
23                                      Jim Swain

24

25

26

27

28

                                        -15-